WESTERN PAC. R. CO. v. WASATCH CHEMICAL CO.

No. 7399.   Decided April 25, 1950.   (217 P. 2d 371.)

See 13 C. J. S., Carriers, sec. 314.

*Samuel J. Nicholes,* Salt Lake City, for appellant.

*Fabian, Clendenin, Moffat & Mabey,* Salt Lake City, *Peter W. Billings,* Salt Lake City, for respondent.

PRATT, Chief Justice.

The question involved here is as to how a spray-dip machine—a machine for spraying livestock with insecticide—should be classified for freight rate purposes. It calls for an analysis of the functioning of the various parts of the machine. Plaintiff railroad brings this action to recover a balance claimed due upon hauls of such machines from California to Utah. The lower court allowed recovery upon the ground that the machine was a combination livestock spraying pen or chute and a sprayer, not otherwise indexed by name, in the freight classification schedules and therefore subject to first class rate. Defendant claims, however, that it should bear the same rate as sprayers as listed in the published tariffs of the Interstate Commerce Commission; and that the plaintiff has been paid all that is due upon the rate for a sprayer. There is no controversy between the parties as to the existent classifications for rate fixing purposes, or the rates attached to each.

The machine, as pictured in its advertisement, has somewhat the appearance of an automobile trailer for hauling one animal, with machinery and a tank as attachments—all mounted on two pneumatic tired wheels, with tongue or draw bar attachment for attaching to a truck or auto-

mobile to haul it from place to place. For the purpose of distinguishing the whole unit from its parts, we shall call the whole unit a trailer. The animal is driven into an enclosed chute, which it practically fills. The door is closed and the spray turned on. Some twenty-eight nozzles spray the animal from all angles. The run-off solution is gathered again in a drain pit, then taken through a revolving filter, dropped back into the tank from which it was sprayed and used over again. It is called "Automatic Spray-Dip," by its manufacturer. The walls of the chute are slanted to keep the animal's feet close to the center of the chute and thereby prevent it from jumping or moving about. It is for this reason that the chute is apparently not much good for anything else but the spraying process as the only way of getting at the animal for any other purpose would be to get in with it which would be difficult as one's feet would slide down the slanting side walls and close to or under the animal's body. All mechanical parts of the trailer are for the purpose of providing the spray and gathering and filtering the run-off. The overall length of the trailer is 12 feet 6 inches which includes the tougue or draw bar. Without the draw bar it is 11 feet 8 inches. Its height is 7 feet 4 inches for transportation purposes. Its weight is about 2200 pounds. It is 6 feet wide. These measurements are taken from the manufacturer's specifications.

The Interstate Commerce Commission freight rate schedules speak of sprayers as follows:

Items

No. 15370 "Sprayers, field, garden or orchard, barrel or tank with or without engines"

and

No. 15380 "Sprayers NOIBN, with or without engines" (the capitals refer to *N*ot *O*therwise *I*ndexed *B*y *N*ame)

Rule 18 of the Consolidated Freight Classification No. 17 reads:

"Rule 18. Combination Articles. When not specifically classified articles which have been combined or attached to each other will be

charged at the rating for the highest classified article of the combination."

Supplement No. 8 to Consolidated Freight Classification No. 17 has this classification mentioned:

No. 16937 "Spraying pens or chutes, livestock, NOIBN, wood and steel combined, loose or in packages"

Appellant refers to two other items:

No. 16665 "Cattle dehorning chutes, KD, loose or in packages LCL

3rd class" (KD is knocked down)

No. 16955 "Stalls, KD, livestock, loose or in packages LCL 3rd class"

The lower court's finding of fact No. 6 reads:

"6. That the article transported by Plaintiff and delivered to Defendant is properly classified as a livestock spraying pen or chute, wood and steel combined, item No. 16937 of Western Classification No. 72 contained in Consolidated Freight Classification No. 17 and Sprayers NOIBN with engines, item No. 41017 of said classification, a combination article, set up, to which under the provisions of rule 18 of said consolidated freight classification No. 17, a first class rate is applicable."

No. 41017 reads: (so far as material here)

"Sprayers, noibn with or without engines. * * *" (It is similar to No. 15380 above).

The logic of appellant's theory of classification is this: Formerly the animals were driven through a chute, into a large tank, a dipping vat that was nearly filled with the insecticide. The animals passed through this liquid, which was nearly deep enough for them to swim in. Now the present trailer with its animal inclosure replaces this big tank or vat through which the animals were driven. In other words, the present trailer is backed up to the regular cattle chutes—chutes the same as when the dipping vats were used—and one animal at a time is inclosed in

the trailer and the spray turned on. It takes but a few seconds; then this one is driven on through and another animal driven in. In view of the fact that the present trailer replaces the old time vat or tank through which the animals practically swam, and the chutes, then, were the inclosed driveways that led up to the tank, appellant reasons that the present trailer should be considered nothing but a unit spray that replaces the vat but not the chute of old. That, in effect, the chutes are still, as they were, with the vat, a separate affair entirely.

Respondent on the other hand is impressed with the functioning of the different parts of the trailer; comparing the inclosure with a pen or chute, and the sprayer with other sprayers listed in items numbers 15380 and 41017; that the inclosure is comparable to item 16937 above.

There is, of course, logic in each of these contentions, and the difficulty arises in determining which view should have been adopted. The burden fell upon the shoulders of the lower court. Did that court arrive at a reasonable determination?

It seems obvious that the inclosure of this trailer is not a "pen" as one ordinarily recognizes the meaning of the word. Respondent quotes "pen" from Webster as follows: "A small inclosure for animals; any small place of confinement." There is an implication of some appreciable period of time involved in the idea of that confinement—in other words a comparison with the idea of allowing the animals to run free.

The definition of chute, quoted by respondent, is nearer the present function:

"Agric. a narrow high walled passageway or similar device for holding or restraining animals, esp. cattle as for branding or dehorning."

Were the words "or spraying" added, the present situation would be described rather accurately.

The question, then, is: Does the fact that in that chute is a spraying outfit, and the fact that attached to it are the machinery and tank to work with the spray, deprive it of its individuality as a chute and make of it a part of a trailer unit which can be reasonably classed only as a sprayer? We do not think so. Were the chute used alone with some person inside doing the spraying—assuming it were possible to stand in there to do this —it would have chute qualities primarily, such as the dehorning chute. The fact that the spraying is done by outside control of the spray should make no difference. It still has chute qualities; and we see nothing about the attaching of the spray that justified limiting its classification to that merely of a sprayer. Item No. 16937—"spraying * * * Chutes" seems to describe it with as much particularity as No. 16665 describes a dehorning chute.

Having concluded that the chute, as a distinct unit in and of itself, is not merged into a sprayer, for classification purpose, it is unnecessary for us to consider whether or not the reverse is true—that is, that the sprayer loses its individuality and becomes merely a part of the chute —because the classification as a spraying chute carries the first class rate—the highest rate. (See Rule 18 above.) The attachment of the sprayer even if considered as simply the construction of a "spraying chute," would not effect the rate under rule 18.

Judgment affirmed. Costs to respondent.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.